FILED'06 MAY 23 10:58USDC-ORP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROBERT E. ELLISON, | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 05-6195-KI |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

KATHRYN TASSINARI
Harder, Wells, Baron & Manning
474 Willamette, Suite 200
Eugene, Oregon 97401

     Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

JEFFERY BAIRD
Special Assistant U.S. Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

     Attorneys for Defendant

KING, District Judge:

Plaintiff Robert Ellison seeks judicial review of the Social Security Commissioner's final decision denying his application for supplemental social security income (SSI) benefits under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383©). The Commissioner's decision is affirmed and the case dismissed.

## BACKGROUND

Born December 22, 1960, Ellison reports leaving school at sixth grade and obtaining a GED. Tr. 62, 83.[1] He worked intermittently as a home builder, forklift operator, and restaurant bus person between 1996 and 2001. Tr 78.

Ellison states that he was first bothered by chronic back and neck pain, carpal tunnel syndrome and depression in April 1999. Tr. 77. He contends he has been disabled and unable to work because of these impairments since October 1, 2001. Tr. 77.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Ellison challenges the ALJ's evaluation of the evidence and his conclusions at step five.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer (Docket #7).

RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 416.920(e), 416.945; Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform work in the national economy at step five.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy. *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of establishing functional limitations rests upon the claimant. If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity. *Yuckert*, 482 U.S. at 141-2; *Tackett*, 180 F.3d at 1098. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S FINDINGS

The ALJ found Ellison's ability to work limited by his carpal tunnel syndrome, cervical and lumbar spinal impairments and psychological impairments. Tr. 19. The ALJ assessed Ellison's RFC as follows:

> The claimant has the residual functional capacity to perform light work. He is unable to do work requiring use of ropes, ladders, crouching, crawling or overhead reaching with the left arm. He is unable to do jobs requiring bilateral gripping. He has moderate limitations in the ability to work in coordination or proximity to others without being distracted by them and moderate limitations in the ability to interact appropriately with the general public and to get along with co-workers or peers. He has moderate cognitive limitations.

Tr. 19.

3 - OPINION AND ORDER

At step four, the ALJ found that Ellison could not perform past relevant work.  Tr. 17, 21.

At step five, the ALJ found that Ellison's RFC did not preclude all work in the national economy.

Drawing from the vocational expert's testimony, the ALJ identified three examples of work

Ellison could perform: packing worker, clothes marker, and final assembler.  Tr. 20.

Accordingly, the ALJ determined that Ellison was not disabled under the Act at any time through

the date of his decision.  Tr. 20-1.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner

applied proper legal standards and the findings are supported by substantial evidence in the

record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d

1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts

from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)

*citing Martinz v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986).  The reviewing court "may not

substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152,

1156 (9th Cir. 2001).  Variable interpretations of the evidence are insignificant if the

Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see* also

*Batson*, 359 F.3d at 1193.

## DISCUSSION

Ellison contends that the ALJ failed to reach an accurate RFC assessment because he

improperly rejected an evaluating psychologist's opinion, improperly rejected a treating

physician's opinion and failed to meet the his burden of showing Ellison could perform other

work in the national economy.  Ellison also claims the ALJ solicited inadequate vocational

4 - OPINION AND ORDER

testimony in relying upon the disputed RFC assessment.

**1. Ellison's Credibility**

The ALJ's reasoning for suspecting Ellison's credibility is primarily based upon Ellison's history of methamphetamine and alcohol abuse and a completed prison sentence for fraudulent credit card applications. Tr. 16, 17, 19. Ellison's credibility in turn influences interpretation of his medical record, discussed below.

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding severity of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In construing his findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regrading symptoms by the claimant. *Id*.

The ALJ found Ellison "not totally credible." Tr. 21. The ALJ cited four general bases for this conclusion. The first and most significant is Ellison's drug and alcohol abuse, which the ALJ noted eight times in his decision. Tr. 16-19. The ALJ also considered that Ellison's criminal history included reporting false information to the police and fraudulent credit card applications, pointing out that these are crimes of dishonesty. Tr. 19. The ALJ rejected Ellison's claim that a surgeon, Dr. Segal, in Tennessee notified him by telephone that Ellison required additional

cervical surgery. Tr. 19. An ALJ must give sufficiently specific reasons for rejecting such testimony, but it is appropriate to cite inconsistent medical records. Segal's records do not support Ellison's testimony. Tr. 148. *Smolen*, 80 F.3d at 1284, *Orteza*, 50 F.3d at 750.

The ALJ's assessment additionally discussed Ellison's physical capacity exam, which showed that Ellison refused to perform or complete many exercises. Tr. 17, 164-5. Self limiting in physical capacity testing may support a negative credibility finding. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

For these reasons the ALJ's findings regarding Ellison's credibility are sufficiently specific to permit and require this court to conclude they are not arbitrary. *See Batson*, 359 F.3d at 1193. Ellison correctly submits that a negative credibility finding does not automatically determine a claimant is not disabled. The ALJ has a duty to consider the entire record in making his disability finding. 20 C.F.R. § 416.920(a)(3). However, if the ALJ determines that the claimant is not credible, the ALJ may reject his pain testimony. *Magallanes*, 881 F.2d at 755. Ellison's credibility is therefore significant in evaluating his pain testimony.

## 2.  Medical Source Statements

Ellison submits that the ALJ erred in rejecting the opinion of examining psychologist Dr. Balsamo, and in failing to give clear and convincing reasons for rejecting the opinion of treating physician Dr. Williams.

### a. Dr. Balsamo

The ALJ rejected Dr. Balsamo's opinion entirely because "it is based upon a one-time evaluation by a non-treating source and includes consideration of claimant's alleged physical impairments, an area outside the expertise of a psychologist." Tr. 17. Outright rejection of an

opinion simply because it was rendered by an examining source is erroneous.  20 C.F.R. §§

416.919, 416.919a, 416.927(d).  Furthermore, an ALJ must give "clear and convincing" reasons

for rejecting the uncontroverted opinion of an examining psychologist.  *Edlund v. Massanari*,

253 F.3d 1152, 1158 (9th Cir. 2001) *citing Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

Consideration of physical impairments does not render Balsamo's psychological findings

irrelevant.  The ALJ may cite appropriate aspects of a medical opinion without incorporating

every specific element of that opinion.  *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

Balsamo diagnosed Ellison with major depression, alcohol abuse, [meth]amphetamine

abuse, and a personality disorder with borderline and antisocial features.  Tr. 160.  Balsamo

subsequently assigned Ellison a GAF of 38-42.[2]  Tr. 160.  Ellison submits that if Balsamo's

report were credited, Ellison would meet the listed standard for disability at step two. Balsamo

concluded:

> The results of this evaluation produced no evidence of a mental
> deficiency or neuropsychological impairment.  Mr. Ellison's daily
> functioning, however, is markedly limited by severe depression as
> well as by chronic pain associated with a neck injury.  Social
> functioning is also quite poor.  Mr. Ellison is withdrawn and
> isolated... There is likely to be some reduction in concentration,
> persistence and pace due to depression, but his neuro-cognitive
> skills are intact.  There were no reports of decompensation in a
> work setting due to psychological factors.  His ability to tolerate
> stress at the present time, however, is markedly impacted by an
> elevated sense of hopelessness and persistent suicidal ideation.

Tr. 161.

Ellison does not specify what listed impairment Dr. Balsamo's report allegedly meets.

---

[2] The GAF scale is used to report a clinician's judgment of the patient's overall level of
functioning on a scale of 1 to 100.  *Diagnostic and Statistical Manual of Mental Disorders* (4th
ed. 1994) 30-32.

7 - OPINION AND ORDER

In order to meet the listings for an affective disorder (12.04) or a personality disorder (12.08) the claimant must meet specified criteria. 20 C.F.R. Pt. 404, Subpart P, App. 1, §§ 12.04, 12.08. DDS[3] determined that Ellison meets the "A" criteria for an affective disorder via his major depression. Tr. 231. If a claimant meets the "A" criteria, the adjudicator must determine if the claimant meets *either* 1) two of the specified "B" *or* 2) one of the specified "C" criteria for an affective disorder. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.04. Dr. Balsamo endorsed "marked" limitation in daily functioning due to severe depression. Tr. 161. He did not endorse any other "B" criteria specified in the listing. Balsamo specifically indicates that "there were no reports of decompensation," which means Ellison does not meet the "C" criteria. 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.04. Because Balsamo's report does not indicate that Ellison meets two elements of the "B" criteria *or* the "C" criteria, Ellison's submission that Balsamo's report renders him disabled under the listings for his depression fails. *Id.*

The listing for a personality disorder (12.08) specifies that a claimant must meet one "A" criteria and two "B" criteria. Balsamo's report may be construed to endorse "persistent disturbances of mood or affect," satisfying this requirement. Tr. 159-60, 20 C.F.R. Pt. 404, Subpart P, App. 1, § 12.08. It is not clear that Balsamo endorses two "B" criteria. DDS reviewing sources noted that Ellison's living situation could be due to economic factors rather than personality disorder. Tr. 231. Under this view, the only "B" criteria Balsamo endorses is "reduction in concentration, persistence and pace *due to depression* [emphasis added]." Tr. 161.

---

[3]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 404.1503.

This does not satisfy the "B" criteria for a personality disorder.  Thus Ellison's submission that

Balsamo's report establishes disability under listing 12.08  fails.

**b. Dr. Williams**

The ALJ rejected treating and primary care physician Dr. Williams' opinion because he

"did not set forth particular limitations aside from abstaining from manual labor or computer

work, and appears to rely on vocational factors such as education and transferability of skills...

which are not dispositive in determining disability for a younger individual."  Tr. 18. This is

erroneous regarding Williams' description of Ellison's impairments.

Regarding Ellison's ability to work, Williams wrote:

> Because of pain and musculoskeletal dysfunction, any form of
> manual labor would be difficult for Mr. Ellison to perform.  This
> includes working at a computer because of his carpal tunnel
> syndrome.  I do believe Mr. Ellison's complaints are valid and that
> his neck and low back dysfunction are precluding him from gainful
> employment at this time.

Tr. 438.

Williams' observations are supported by clinical notes.  Tr. 282-287.  In focusing upon

Williams' work restriction, the ALJ did not consider these notes.  Tr. 18.  Vocational decisions

are reserved for the Commissioner.  20 C.F.R. § 416.928(e)(1).  An ALJ is not bound to accept

vocational suggestions from medical sources,  but the ALJ must give clear and convincing

reasons for rejecting a treating physician's opinion.  *Id.*, *Smolen*, 80 F.3d at 1285.

In a letter summarizing his treatment notes, Williams wrote:

> My evaluation has shown consistent dysfunction related to pain. In
> addition, [Ellison] has evidence of a neurological impingement
> syndrome likely occurring in both the cervical spine as well as the
> coarpal tunnell area... In my frequent evaluation of Mr. Ellison, he
> has regular complaints of neck, shoulder and arm pain.  In addition,

he has frequent episodes of acute back pain.

Tr. 438.

An ALJ is not required to credit statements made to a physician if the claimant is found not credible. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Williams' notes support some objective limitations, including carpal tunnel syndrome with associated hand numbness. Tr. 283-284. Williams evaluation showed good upper extremity range of motion and no change in Ellison's lower extremity complaints. Tr. 283. Williams consistently noted Ellison's reported pain. Tr. 282-287. Williams repeatedly reduced Ellison's narcotic medication based upon Ellison's drug abuse and suspected drug seeking behavior. Tr. 282, 285-6.

Williams also suggests mild psychological impairment, writing, "In regard to psychological health, Mr. Ellison appears to have some anxiety symptoms, but these have not warranted any particular treatment..." Tr. 438. Williams' treatment record documents Ellison's depression, noting that Ellison ceased taking anti-depressant medication because he could not pay for the medication. These notes do not endorse depression that would meet the listing standard discussed above. Tr. 282.

General findings by a consultative neurologist and a hand surgeon support Ellison's carpal tunnel syndrome complaints. Tr. 221-227. A neurologist, Dr. Brooks, found that Ellison had no neck pain, but had a shoulder impingement and carpal tunnel syndrome. Tr. 221. Dr. Singh, a hand surgeon, noted that Ellison's grip strength was "well maintained" but agreed that his carpal tunnel syndrome was confirmed by nerve conduction studies and would reasonably cause the numbness Ellison reported. Tr. 227.

The ALJ appropriately included these findings in Ellison's RFC assessment. Tr. 19.

10 - OPINION AND ORDER

Ellison's exertional RFC limitations correlate with the objective limitations established by Williams in his clinical notes. This assessment restricted left-hand overhead reaching, all bilateral gripping, and lifting more than ten pounds frequently and twenty pounds occasionally. Tr. 19, 254. The ALJ should have considered Williams' medical opinion and records, but this omission is harmless as Williams' observations do not change Ellison's RFC calculation.

### 3. Restrictions in Questions to Vocational Expert

Ellison submits that the ALJ erred in omitting the limitations identified by Williams in his hypothetical questions to the vocational expert (VE). The ALJ must include all limitations supported by substantial evidence in his hypothetical question to the VE, but he may exclude unsupported limitations and disregard VE testimony based upon unsupported limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

Here the ALJ did not find the additional limitations Ellison claims supported by the record, and so did not err in excluding them from his hypothetical questions. *Magallanes*, 881 F.2d at 756-7. The ALJ asked two hypothetical questions. In the first, the ALJ accepted the light work restriction found by DDS reviewing physicians, with an additional sedentary restriction and moderate limitations in interaction with others and the general public. Tr. 260, 477-8. Further restrictions included no climbing ropes, ladders, scaffolds and only occasional stooping, kneeling, crawling, no overhand reaching of the left extremity and no constant gripping. Tr. 478. The ALJ's second hypothetical question included all limitations Ellison suggested in his testimony, such as inability to lift a half gallon of milk and an inability to sit or stand more than fifteen minutes. Tr. 479.

Ellison claims jobs identified by the VE in response to the first hypothetical question did not take into account additional limits described by Williams regrading Ellison's upper extremity function. Because the ALJ did not find these further limitations supported by the medical record, it was not error for the ALJ to exclude these limitations from then vocational testimony considered in his decision. *Osenbrock*, 240 F.3d at 1163-5; *Magallanes*, 881 F.2d at 757.

The forgoing discussion shows that Ellison has failed to show any substantive error in the RFC assessment. The ALJ appropriately included all limitations identified in Ellison's RFC assessment in his hypothetical questions to the vocational expert.

## **CONCLUSION**

The Commissioner's decision that Ellison did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's final decision is AFFIRMED and the case DISMISSED.

IT IS SO ORDERED.

Dated this _22_ day of May, 2006.

Garr M. King
United States District Judge

12 - OPINION AND ORDER